**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | |
|---|---|
| IN RE: STERICYCLE, INC., STERI-SAFE CONTRACT LITIGATION | Case No. 1:16-cv-04142<br>Case No. 1:13-cv-05795 |
| SURGICAL SPECIALISTS OF ALABAMA, P.C. and INTERNAL MEDICINE ASSOCIATES OF ALABAMA, P.C., on behalf of themselves and all putative class members, | MDL No. 2455 |
| Plaintiffs, | Judge Milton I. Shadur |
| v. | |
| STERICYCLE, INC. and STERICYCLE SPECIALTY WASTE SOLUTIONS, INC., | |
| Defendant. | |

## <u>DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS SURGICAL SPECIALISTS OF ALABAMA, P.C. AND INTERNAL MEDICINE ASSOCIATES OF ALABAMA, P.C.'S, CLASS ACTION COMPLAINT</u>

Stericycle, Inc. ("Stericycle") and Stericycle Specialty Waste Solutions, Inc. ("SSWSI") (collectively "Stericycle" or "Defendants") by and through their counsel, hereby answers Plaintiffs' Complaint ("the Complaint") as follows:

### <u>INTRODUCTION</u>

1.      The Complaint is brought individually and on behalf of a class of Alabama Stericycle Customers for violation of Alabama's Deceptive Trade Practices Act (the "ADTPA"), codified at ALA. CODE § 8-19-1, et seq., breach of contract, and unjust enrichment. The ADTPA was created because "[t]he public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson." ALA. CODE § 8-19-2.

ANSWER TO NO. 1:  Stericycle admits that Plaintiffs bring this action to seek judicial relief from Defendants and purport to bring this action as a class action on behalf of similarly situated customers in Alabama. The last sentence in paragraph 1 contains a legal conclusion to which no response is required; to the extent a response is required, Stericycle denies these allegations and the remaining allegations in paragraph 1.

2.      Among other provisions, the ADTPA makes unlawful deceptive acts or practices in the conduct of any trade or commerce, including "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5(27).

ANSWER TO NO. 2:  Paragraph 2 contains a legal conclusion to which no response is required; to the extent a response is required, Stericycle denies the allegations in paragraph 2.

3.      Stericycle's acts and practices in dealing with the Plaintiffs and the members of the putative class are the epitome of unconscionable, false, misleading, and deceptive. Among other practices, Stericycle enters into long-term "fixed rate" contracts with its Alabama customers which it claims will control costs and only be adjusted for a very limited number of reasons such as regulatory changes imposing additional costs, only to arbitrarily charge their customers more and more through automated prices increases completely without any justification of any kind. When customers discover these issues and protest and/or cancel their service, they are punished with liquidated damages provisions in their contracts and a series of contractual tenuis that are unreasonably favorable to Stericycle and are oppressive, one-sided, and patently unfair, terms that are only possible because of the unequal bargaining power among the parties aid the lack of meaningful choice in the regulated medical waste industry.

ANSWER TO NO. 3:  Stericycle denies the allegations in paragraph 3.

4. The Plaintiffs served written notice on Stericycle pursuant to the ADTPA of Stericycle's unlawful practices and their injuries. Stericycle has not responded.

ANSWER TO NO. 4: Stericycle denies the allegations in paragraph 4.

## PARTIES

5. Surgical Specialists is an Alabama professional corporation with its principal place of business in Tuscaloosa County, Alabama. It provides general surgical services that include office based care and procedures, outpatient procedures, as well as inpatient procedures and care. Surgical Specialists has to dispose of medical waste collected in the course of treating its patients.

ANSWER TO NO. 5: Stericycle admits that Surgical Specialists is an Alabama corporation with its principal place of business in Tuscaloosa County, Alabama, and admits that Surgical Specialists generates medical waste in the course of treating its patients. Stericycle denies the remaining allegations in paragraph 5 based on lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

6. Internal Medicine Associates is an Alabama professional corporation with its principal place of business in Tuscaloosa County, Alabama. Its physicians provide healthcare to its patients to treat and prevent adult illnesses. Internal Medicine Associates likewise has to dispose of medical waste collected in the course of treating its patients.

ANSWER TO NO. 6: Stericycle admits that Internal Medicine Associates is an Alabama corporation with its principal place of business in Tuscaloosa County, Alabama, and admits that Internal Medicine Associates generates medical waste in the course of treating its patients. Stericycle denies the remaining allegations in paragraph 6 based on lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

4826-1632-7727.v2

7.     Stericycle, Inc. is a Delaware corporation with a principal place of business located at 28161 North Keith Drive, Lake Forest, Illinois. Its registered agent in Alabama is CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

ANSWER TO NO. 7:  Stericycle admits the allegations in paragraph 7.

8.     Stericycle Specialty Waste Solutions, Inc. is a Delaware corporation with a principal place of business located at 28161 North Keith Drive, Lake Forest, Illinois. Its registered agent in Alabama is CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

ANSWER TO NO. 8:  Stericycle admits the allegations in paragraph 8.

9.     Stericycle describes itself as a "global business-to-business solutions provider." Its customers' industries are "healthcare, pharmacies & retail, biotech, manufacturing, professional services, governments." Its "[c]ontracts generally include pass through price increase provisions" and it focuses on small customers because "[s]mall account customers generate gross margins higher than large account customers" and "[s]mall account customers are more likely to outsource and are easier to up-sell."

ANSWER TO NO. 9:  Stericycle admits that the statements in paragraph 9 have, at times, appeared in Stericycle's public disclosure statements.

10.     Stericycle generates its nearly $3 Billion in revenue by programming its internal billing and accounting software to automatically charge an 18% annual price increase in the flat rates it charges its customers. In 2015, Stericycle had $2.99 Billion in revenue and GAAP gross profit of $1.27 billion. At all times material to this complaint, Stericycle operated a medical waste removal service in Alabama for the Plaintiffs and others.

4826-1632-7727.v2

ANSWER TO NO. 10:  Stericycle admits that in 2015 it had $2.99 billion in revenue and GAAP gross profit of $1.27 billion from all product sales and services worldwide. Stericycle also admits that it provided medical waste removal services in Alabama and for Plaintiffs. Stericycle denies the remaining allegations and characterizations in paragraph 10.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because the Plaintiffs and members of the putative class are citizens of a state different from the state of the Defendants and this case is a class action in which the aggregate claims of all members of the putative class exceed $5,000,000.00, exclusive of interest and costs.

ANSWER TO NO. 11:  Stericycle admits the allegations in paragraph 11.

4 [SIC].      Pursuant to 28 U.S.C. § 1391, this judicial district is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this district. Plaintiffs are citizens of this district and entered into contracts with Stericycle in this district. This Court has personal jurisdiction over the Defendants because Defendants have sufficient minimum contacts with Alabama. Defendants avails themselves of the privilege of conducting business in Alabama through medical waste removal and transportation services sufficient to render the exercise of personal jurisdiction by this Court consistent with traditional notions of fair play and substantial justice.

ANSWER TO NO. 4 [SIC]:  Stericycle avers that venue is appropriate in the Northern District of Illinois, to which this case was recently transferred for inclusion in the *In re Stericycle, Inc., Steri-Safe Contract Litigation*, MDL No. 2455, consolidated proceedings. Stericycle denies the remaining allegations in paragraph 4 [SIC].

## FACTS

**A.  Stericycle**

12.  Stericycle has been in the medical waste business since 1989. As Stericycle explains on its website, medical waste includes "any solid waste that is generated in the diagnosis, treatment, or immunization of human beings or animals." It includes but is not limited to items that are freely dripping liquid or semi-liquid blood or "potentially infectious materials" or could readily release infectious materials if compressed, items containing dried blood or "potentially infectious materials" that could release flakes if compressed or otherwise handled, human blood and blood products, hemodialysis waste of all items that were in contact with a patient's blood (tubing, filters, towels, gloves, aprons, lab coats) and any other contaminated disposable equipment, human or animal isolation wastes, sharps waste, surgery or autopsy tissue, organs, or body parts, surgical and autopsy wastes, cultures or stocks of any virus, bacterium or other organism including discarded live attenuated vaccines and the items used to transfer, inoculate or mix cultures, tissues, organs, body parts, bedding, carcasses, and body fluids from experimental animals, teeth in dentistry, laboratory wastes that have been in contact with infectious wastes, discarded medical equipment and its components that have been in contact with infectious agents, any other discarded item or waste that an administrator believes poses a threat to human health or the environment, potentially infectious body fluids. Stericycle's waste-related services include waste pickup and disposal.

ANSWER TO NO. 12:  Stericycle admits the allegations in paragraph 12.

13.  Stericycle serves more than 566,000 customers worldwide (as of 2013). It divides its customers into two categories: large-quantity and small-quantity waste generators. Large-quantity waste generators include hospitals, blood banks, and pharmaceutical manufacturers. Small-quantity waste generators are small businesses like the Plaintiffs' medical practices,

6

outpatient medical clinics, medical and dental offices, long-term and subacute care facilities, veterinary offices, and retail pharmacies. As of 2015, approximately 63% of Stericycle's customers were small-quantity or "SQ" customers.

ANSWER TO NO. 13:  Stericycle admits the allegations in paragraph 13.

14.     When Stericycle acquires a new small-quantity customer, it offers the customer a standard form Steri-Safe Contract. It provides for monthly or quarterly waste pick-ups. The Plaintiffs and putative class members signed the Steri-Safe Contract.

ANSWER TO NO. 14:  Stericycle admits that at times it offers customers certain agreements called Steri-Safe agreements. Stericycle admits that Plaintiffs signed a form of the Steri-Safe agreement. Stericycle avers that an agreement's terms vary according to the individual customer. Stericycle denies the remaining allegations in paragraph 14.

15.     The term of the Steri-Safe Contract is typically 36 to 60 months from the effective date. To prevent automatic renewal, the customer must give 60 days' written notice of intent to terminate the agreement, and the notice must be made during the six-month period prior to the renewal date.

ANSWER TO NO. 15:  Stericycle admits that certain of its contacts contain automatic renewal terms. Stericycle denies the remaining allegations in paragraph 15 and avers that the provisions of the agreements, including the lengths of extension terms and the notice periods, vary by individual customer and contract.

16.     If a customer terminates the Steri-Safe Contract prior to expiration of the term, Stericycle has the right to recover from the customer liquidated damages in an amount equal to 50% of the customer's average monthly charge multiplied by the number of months remaining on the term.

4826-1632-7727.v2

ANSWER TO NO. 16:  Stericycle admits that certain of its contracts contain liquidated damages provisions. Stericycle denies the remaining allegations in paragraph 16 and avers that the provisions of the agreements, including the specifics of the liquidated damages provisions, vary by individual customer and contract.

17.     Customers typically pay Stericycle a flat fee on a monthly or quarterly basis. The flat fee is listed on the cover page of the Steri-Safe Contract.

ANSWER TO NO. 17:  Stericycle admits that its contracts state the amounts Stericycle will charge its customers. Stericycle denies the remaining allegations in paragraph 17 and avers that the provisions of the agreements, including charges and fees, vary by individual customer and contract.

18.     Stericycle may increase the monthly or quarterly flat fee only under limited conditions during the term of the contract:

> Stericycle reserves the right to adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation.

ANSWER TO NO. 18:   Stericycle admits that certain of its contracts contain the language quoted in paragraph 18. Stericycle denies the remaining allegations in paragraph 18 and avers that the provisions of the agreements vary by individual customer and contract.

19.     Despite these limitations under which Stericycle may increase its fees, Stericycle has engaged in a systematic and deliberate practice of raising its fees based on an automated price increase ("API") of 18% during a calendar year on Steri-Safe Contract customers. These predetermined price increases were unconscionable, deceptive, fraudulent, improper, and just plain wrong because they bear no relationship to Stericycle's "operational changes," "documented changes in the law," or "cost escalation."

<u>ANSWER TO NO. 19</u>:  Stericycle denies the allegations in paragraph 19.

20.     Stericycle's Vice President of Sales Operations explained automated price increases:

> Q.     . . . what's your understanding of the term "automated price increase"?
>
> A.     Automated price increase is a system-generated price increase that's applied to the customer's pricing.
>
> Q.     And for small quantity customers who have not — whose contract does not specifically state what their future pricing is going to be, unless that customer is for some reason exempted from the automated price increase process, those price increases are imposed on the customer by a function of Stericycle's billing system; is that right?
>
> A.     Yes.

Deposition of James Edward Buckman, pp. 30-31. He continued:

> Q.     During your time at Stericycle it's been true, hasn't it, that the standard automated price increase percentage for small quantity customers was 18 percent?
>
> A.     Yes.

*Id.* at 32.

<u>ANSWER TO NO. 20</u>:  Stericycle admits that paragraph 20 contains selected excerpts from a recent deposition of James Buckman. Stericycle denies the remaining allegations in paragraph 20.

21.     Stericycle uses (or has used) an electronic financial accounting and reporting system named "Tower." The automated price increase process is built into the Tower system, but the intervals in which Stericycle imposed API varied. Stericycle modulated the timing of the API in order to meet revenue targets -- there was no connection to actual cost increases that might justify a price increase. Automated Price Increases are a major revenue source for Stericycle.

<u>ANSWER TO NO. 21</u>:  Stericycle admits that it has used certain electronic financial accounting and reporting systems, including one named "Tower." Stericycle admits that certain

customers have agreed to and have been charged APIs. Stericycle denies the remaining allegations in paragraph 21.

22.     Stericycle's costs fluctuate and do not uniformly increase from year- to-year, but Stericycle does not modify the API to reflect these fluctuations.  Stericycle does not internally correlate the API to its own costs. Stericycle's costs do not increase 18% every nine or twelve months.

ANSWER TO NO. 22:  Stericycle admits that its costs fluctuate. Stericycle denies the remaining allegations in paragraph 22.

23.     In fact, in a deposition, Mr. Buckman (Stericycle's Vice President of Sales Operations) conceded that automated price increases are done to make sure that Stericycle hit revenue numbers it had predicted, not based on cost figures:

> Q.     And what about, have you ever heard mention of needing to increase revenue in order to meet the revenue forecasts that Stericycle gives to the investment community?

> A.     I would say that's part of our internal goal. That's related to our internal goal.

> Q.     ...you're concerned more with meeting revenue targets rather than being concerned about the cost of providing services or products to Stericycle's customers; isn't that right?

> A.     That is the primary focus of the sales and marketing organization.

> Q.     So, you are given a revenue goal and you figure out how to meet that goal, but in making decisions in order how to do that, you don't specifically consider Stericycle's cost of, you know, how much it cost to provide services to any specific customer or type of customer; isn't that right?

> A.     I don't understand the question.

> Q.     Well, I think you said it's another part of Stericycle's organization that keeps track of the cost of providing goods and services to customers, right?

> A.     Correct.

Q.    You are given a revenue target or a revenue goal that you are expected to meet along with your colleagues, and you come up with initiatives in ways that you think that you can meet that goal, correct?

A.    Correct.

Q.    But when you are making decisions about specific initiatives, such as changing the frequency of automated price increases, you don't go back and look and say, hey, how much is -- you know, how much is it costing us to dispose of medical waste, how much are we paying for labor or any other specific cost factors when you are making those revenue decisions, do you?

A.    Not specifically.

Q.    You -- because from your point of view, whatever decisions there are about maintaining gross margins, those are made in setting the goal of revenue that you are expected to generate, right?

A.    Right.

Q.    So, when you are deciding whether to change the frequency of automated price increases, you don't need to go back and look at those cost figures; all you need to do is make sure you hit your revenue numbers in order to make sure you keep your margins, right?

A.    In my role, yes.

Deposition of James Edward Buckman, pp. 68-70.

ANSWER TO NO. 23:  Stericycle admits that paragraph 23 contains selected excerpts from a recent deposition of James Buckman. Stericycle denies the remaining allegations in paragraph 23.

24.    The price increases that Stericycle imposed on small-quantity customers can be determined from the electronic records contained in Stericycle's financial reporting systems.

ANSWER TO NO. 24:  Stericycle denies the allegations in paragraph 24.

25.    In addition to charging its customers API, Stericycle also increased its prices by imposing fees and surcharges. These were called "Environmental / Regulatory Fees," "Fuel Surcharges," "Energy Fees," or "California SB 1807 Fees" ("Undisclosed Fees"). Stericycle frequently hid these Undisclosed Fees by embedding them in the flat fee.

11

ANSWER TO NO. 25:  Stericycle admits that certain of its customers were charged fees for environmental/regulatory, energy, and fuel. Stericycle denies the remaining allegations in paragraph 25.

26.     The fees and surcharges were part of Stericycle's plan to ensure it hit revenue goals:

> Q.     ... fees and surcharges are one of the ways that Stericycle makes sure that any decreases or changes in its revenue don't cause it to miss its targeted revenue goals, right?
>
> A.     As -- as part of the sales and marketing organization, I would say yes, that we have had fee increases in order to achieve revenue goals within the sales and marketing organization.

Buckman Dep., pp. 261-62.

ANSWER TO NO. 26:  Stericycle admits that paragraph 26 contains selected excerpts from a recent deposition of James Buckman. Stericycle denies the remaining allegations in paragraph 26.

27.     Stericycle concealed the API algorithm. When Stericycle imposes API, it issues an invoice to the customer for the new inflated flat fee without explanation. This makes it difficult if not impossible for customers to discover that their fee increases were unjustified.

ANSWER TO NO. 27:  Stericycle denies the allegations in paragraph 27.

28.     Since 2004, Stericycle has known that several governmental authorities consider API to be an improper practice. These authorities include New York City, the State of New Jersey, and the State of Washington. Based on their objections, Stericycle formulated a written policy forbidding the use of API within those jurisdictions.

ANSWER TO NO. 28:  Stericycle denies the allegations in paragraph 28.

29.     Stericycle executives were aware that the federal government objected to API. In September of 2006, Stericycle's Vice President, Patrick Cott, sent an email to his subordinates

directing them to stop charging API to federal government customers. Nevertheless, Stericycle continued to impose API on its small-quantity private sector customers.

ANSWER TO NO. 29: Stericycle denies the allegations in paragraph 29.

30. Indeed, Stericycle's actions were the subject of a large qui tam suit which has only just completed. The suit was brought by relator Jennifer Perez, a government customer relations specialist with Stericycle between 2004 and 2008. Ms. Perez discovered that Stericycle was routinely imposing 18% price increases annually and even more often on customers with long-term fixed rate contracts that prohibited price increases or allowed increases only to address certain costs in servicing Stericycle's customers. According to Ms. Perez, her supervisors routinely admitted to her they were aware that Stericycle's APIs were improper.

ANSWER TO NO. 30: Stericycle admits that Jennifer Perez is a former Stericycle employee. Stericycle further admits that Ms. Perez filed a complaint with the referenced allegations. Stericycle denies the allegations in Ms. Perez's complaint and denies the remaining allegations in paragraph 30.

31. On April 28, 2008, Perez filed a qui tam complaint against Stericycle. She alleged that Stericycle defrauded the United States, 14 states, and the District of Columbia by imposing API in violation of its contracts. Ms. Perez further alleged, "Stericycle fails to inform its customers that despite the contract price it has agreed to, Stericycle intends to and adds unallowable surcharges to each bill, in addition to an undisclosed 18% across the board increase every 9 months."

ANSWER TO NO. 31: Stericycle admits that Ms. Perez filed a complaint against Stericycle with the referenced allegations. Stericycle denies the allegations in Ms. Perez's complaint and denies the remaining allegations in paragraph 31.

32.     On January 2, 2013, Stericycle settled the case initiated by Ms. Perez with the Attorney General of New York. In the Settlement Agreement, Stericycle admitted that during the period January 1, 2003, through September 30, 2012, it had presented invoices containing API which was not authorized by the contracts.

ANSWER TO NO. 32:  Stericycle admits that it settled the case initiated by Perez with the Attorney General of New York. Stericycle denies the remaining allegations in paragraph 32.

33.     The $2.4 million Settlement Agreement between Stericycle and New York provides that Stericycle will reimburse the state for 100% of the charges resulting from API. In addition, Stericycle agreed to pay treble damages to New York as a result of the API. That settlement did not provide any relief for the Plaintiffs and/or members of the putative class in Alabama.

ANSWER TO NO. 33:  Stericycle denies the allegations in paragraph 33.

34.     On February 1, 2016, United States District Court Judge William T. Hart granted a motion by Ms. Perez for the consent of the court for voluntary stipulation of dismissal of the qui tam action.

ANSWER TO NO. 34:  Stericycle admits the allegations in paragraph 34.

35.     The Plaintiffs' experiences with Stericycle mirror the wrongful practices described in the qui tam action and are typical of the experiences of the members of the putative class, as is evident from the Plaintiffs' contracts with Stericycle which are attached as Exhibits 2-5.

ANSWER TO NO. 35:  Stericycle denies the allegations in paragraph 35.

4826-1632-7727.v2

## B.    Surgical Specialists

36.    In November 2008, Surgical Specialists entered into a Steri-Safe Service Agreement with Stericycle. The contract provided for a monthly service fee of $297.00 per month, with additional charges for additional waste services. *See* Ex. 2.

ANSWER TO NO. 36:  Stericycle admits that Tuscaloosa Surgical Specialists entered into a Steri-Safe Service Agreement with Stericycle in November 2008. Stericycle denies that the contract attached as Exhibit 2 is the entire contract and denies the remaining allegations in paragraph 36.

37.    Surgical Specialists entered into a second agreement with Stericycle on July 9, 2014. *See* Ex. 3. This time the contract provided for a monthly service fee of $1,267.45 per month plus additional charges.

ANSWER TO NO. 37:  Stericycle admits that Tuscaloosa Surgical Specialists entered into a Steri-Safe Service Agreement with Stericycle on July 9, 2014. Stericycle denies that the contract attached as Exhibit 3 is the entire contract and denies the remaining allegations in paragraph 37.

38.    On January 1, 2015, Surgical Specialists, entered into a Service Agreement for Hazardous Drug Disposal Service. *See* Ex. 4. As is typical, Surgical Specialists' contract allowed for price increases only in limited circumstances:

> SSWSI reserves the right to adjust the contract price to account for operational charges it implements to comply with changes in law, to cover increases in the cost of fuel, insurance, or residue disposed, or to otherwise address cost escalation. SSWSI may charge Customer a fee to cover its administrative costs in the event that Customer changes its service requirements during the Term or Extension Term.

Ex. 4, ¶ 2.

ANSWER TO NO. 38:  Stericycle admits that Tuscaloosa Surgical Specialists entered into a Hazardous Drug Disposal Agreement with Stericycle on or about January 1, 2015, and that this agreement contains the language quoted in paragraph 38. Stericycle denies that the contract attached as Exhibit 4 is the entire contract. Stericycle denies the remaining allegations in paragraph 38.

39.     Nevertheless, throughout Surgical Specialists' dealings with the Defendant, Stericycle implemented improper and unlawful price increases and overcharges, including for example prices increases from the original $297/month to $311.89/month in January 2009, an increase to $443.06/month in April 2011, an increase to $541.66/month in January 2012, an increase to $633.84/month in July 2012, an increase to $742.62/month in January 2013, an increase to $919.48/month in October 2013, an increase to $l,154.68/month in March 2014, an increase to $l,503.26/month in August 2014, an increase to $1,633.31/month in March 2015, and an increase to $ 1,958.25/month in July 2015.

ANSWER TO NO. 39:  Stericycle admits that the service price increased at certain points during the parties' seven-year business relationship. Stericycle avers that these price increases were expressly authorized by the parties' various contracts. Stericycle denies all remaining allegations contained in paragraph 39.

40.     After having its bookkeeping department review amounts billed and paid to Stericycle, Surgical Specialists contacted Stericycle to cancel its service given Stericycle's fraudulent overbilling and overcharging. In response, Stericycle attempted to charge a cancellation fee of over $16,000.00 and refused to acknowledge and/or credit years of overpayments. After Surgical Specialists rightly refused to pay such a fee, Stericycle turned the matter over to a collection firm.

ANSWER TO NO. 40:  Stericycle admits that Surgical Specialists sought to terminate the agreement prior to its expiration, and as a result, Stericycle charged the contractually allowed fee for early cancellation and attempted to collect this balance owed. Stericycle denies the remaining allegations in paragraph 40.

C.    **Internal Medicine Associates**

41.    In 2000, Internal Medicine Associates began doing business with Stericycle after Stericycle acquired a portion of Browning-Ferris Industries. Internal Medicine Associates continued to do business with Stericycle for over a decade, but faced enormous unjustified price increases throughout the time it did business with Stericycle.

ANSWER TO NO. 41:  Stericycle denies the allegations in paragraph 41.

42.    Over the years, Internal Medicine Associates paid Stericycle escalating amounts from $607.93 in 2000, $2,549.58 in 2001, $3,443.75 in 2004, $6,928.66 in 2007, and $14,660.23 in 2010.

ANSWER TO NO. 42:  In response to paragraph 42, Stericycle avers that Internal Medicine Associates negotiated and executed multiple contracts during the parties' relationship, including changes to the frequency of service and the number of containers provided. Stericycle denies the remaining allegations in paragraph 42.

43.    As recently as August 29, 2014, Internal Medicine Associates entered into an updated agreement with Stericycle. The contract provided for a monthly service fee of $2,675.00 per month, with additional charges for additional waste services. *See* Ex. 5.

ANSWER TO NO. 43:  Stericycle admits the allegations in paragraph 43.

44.    As with Surgical Specialists, Internal Medicine Associates' contract allowed for price increases only in limited circumstances. *See* Ex. 5, ¶ 2.

ANSWER TO NO. 44:  Stericycle denies the allegations in paragraph 44.

45. Stericycle, however, implemented improper and unlawful price increases and overcharges, including for example prices increases from the 2014 contract $2,675/month to $3,092.80/month in October 2014, an increase to $3,610.30 in March 2015, and an increase to $4,360.19/month in September 2015. These are but examples.

ANSWER TO NO. 45: Stericycle admits that the service price increased pursuant to the parties' contract. Stericycle denies the remaining allegations in paragraph 45.

46. After Internal Medicine Associates sent a notice of cancelation to Stericycle, Stericycle sent it an invoice for $14,138.05, including $5,177.27 in new Steri-Safe charges and $175.00 for "other."

ANSWER TO NO. 46: Stericycle admits that it sent an invoice for the open balance upon learning that Internal Medicine Associates sought to terminate the parties' contract early. Stericycle denies the remaining allegations in paragraph 46.

## CAUSES OF ACTION

## COUNT I - ALABAMA DECEPTIVE TRADE PRACTICES ACT

47. Alabama's Deceptive Trade Practices Act was created because "[t]he public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson." ALA. CODE § 8-19-2.

ANSWER TO NO. 47: Paragraph 47 contains a legal conclusion to which no response is required; to the extent a response is required, Stericycle denies the allegations in paragraph 47.

48. Under the ADTPA, it is unlawful for one to "[e]ngag[e] in any . . . unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." *See* ALA. CODE § 8-19-5.

ANSWER TO NO. 48: Paragraph 48 contains a legal conclusion to which no response is required; to the extent a response is required, Stericycle denies the allegations in paragraph 48.

49.     Through its acts described herein, including without limitation its use of API, its sales representatives in marketing and selling its services, and various provisions in the Steri-Safe Contract, Stericycle violated the ADTPA. Stericycle's acts and omissions constitute unconscionable, false, misleading, and deceptive acts and practices in the conduct of trade and/or commerce.

ANSWER TO NO. 49: Stericycle denies the allegations in paragraph 49.

50.     As a result of its acts and omissions, Stericycle is liable to the Plaintiffs for actual damages, treble damages, attorneys' fees, costs, and any other relief the Court deems proper.

ANSWER TO NO. 50: Stericycle denies the allegations in paragraph 50.

## COUNT II - BREACH OF CONTRACT

51.     Plaintiffs entered into valid binding contracts with Stericycle.

ANSWER TO NO. 51: Stericycle admits the allegations in paragraph 51.

52.     Plaintiffs performed under the contracts.

ANSWER TO NO. 52: Stericycle denies the allegations in paragraph 52.

53.     Through its acts and omissions described in this Complaint, Stericycle breached its contracts with the Plaintiffs.

ANSWER TO NO. 53: Stericycle denies the allegations in paragraph 53.

54.     As a result of Stericycle's acts and omissions, Stericycle damaged the Plaintiffs and is liable to the Plaintiffs for actual damages, costs, and any other relief the Court deems proper.

ANSWER TO NO. 54: Stericycle denies the allegations in paragraph 54.

## COUNT III - UNJUST ENRICHMENT/MONEY HAD AND RECEIVED

55.     Plaintiffs conferred a benefit on Stericycle by hiring and paying Stericycle for waste-related services.

ANSWER TO NO. 55:  Stericycle denies the allegations in paragraph 55.

56.     By its actions described in the Complaint, Stericycle has been unjustly enriched at the Plaintiffs' expense and has retained money that should be returned to the Plaintiffs and the other members of the putative class.

ANSWER TO NO. 56:  Stericycle denies the allegations in paragraph 56.

## CLASS REPRESENTATION ALLEGATIONS

57.     Plaintiffs bring this action pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the members of the following Class:

> All persons and entities in Alabama who paid a flat fee for medical waste disposal services to Stericycle pursuant to a Steri-Safe Contract and whose flat fee was increased by an automated price increase policy and/or Stericycle's Undisclosed Fees.

ANSWER TO NO. 57:  Stericycle admits that Plaintiffs purport to bring this case as a class action on behalf of themselves and members of a purported class. Stericycle denies that such action is appropriate or that the class described in paragraph 57 should be certified.

58.     The proposed Class excludes governmental entities, Stericycle, Stericycle's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. It also excludes any judicial officer presiding over this matter aid the members of their immediate families and judicial staff.

ANSWER TO NO. 58:  Stericycle admits that Plaintiffs purport to bring this case as a class action on behalf of themselves and members of a purported class, excluding those

described in paragraph 58. Stericycle denies that such action is appropriate or that the class described in paragraph 58 should be certified.

59.     The definition of the Class is unambiguous. Plaintiffs are members of the Class they seek to represent. Members of the Class can be identified using records maintained by Stericycle. The members of the class can be notified of the class action through publication and direct mailings to address lists maintained by Stericycle.

ANSWER TO NO. 59:  Stericycle denies the allegations in paragraph 59.

60.     Pursuant to Rule 23(a)(1), class members are so numerous that their individual joinder is impracticable. Stericycle has innumerable small-quantity waste disposal customers in Alabama, and a majority of these customers are class members. The precise number of class members is unknown to the Plaintiffs, but that number greatly exceeds the number at which joinder would be practicable.

ANSWER TO NO. 60:  Stericycle denies the allegations in paragraph 60.

61.     Pursuant to Rule 23(a)(2) and (b)(3), questions of feet and law are common to the class except for the amount of damages each member of the class sustained. Common questions of law and fact predominate over the questions affecting only individual class, members. Some of the common legal and factual questions include the following:

(a)     Whether Stericycle used standard form contracts with its small-quantity customers that charged a flat fee for regulated medical waste disposal;

(b)     Whether Stericycle imposed automated price increases on small-quantity waste disposal customers who entered into fee-based medical waste disposal contracts with Stericycle;

(c)     Whether Stericycle's Steri-Safe Contracts with its small-quantity medical waste disposal customers provided that Stericycle could adjust the contract price only to account for operational changes it implemented to comply with documented changes in law, to cover increases in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation;

21

(d)    Whether Stericycle's automated price increases were authorized by its Steri-Safe Contracts;

(e)    Whether Stericycle calculated its automated price increases using amounts of the costs it incurred, whether for changes in law, fuel, insurance, residue disposal, or other costs;

(f)    Whether Stericycle programmed the Tower financial accounting and reporting system to apply a periodic 18% price increase automatically to small-quantity medical waste disposal customer accounts;

(g)    Whether Stericycle maintained the Tower financial accounting and reporting system to track automated price increases imposed on small- quantity waste disposal customers;

(h)    Whether Stericycle instructed employees in its office responsible for responding to customer complaints to give customers pre-textual reasons to justify automated price increases;

(i)    Whether Stericycle disclosed its policy of imposing automated price increases on its small-quantity medical waste disposal customers;

(j)    Whether Stericycle breached its contract with the Plaintiffs aid class members;

(k)    Whether Stericycle's conduct violated the Alabama Deceptive Trade Practices Act;

(1)    Whether Stericycle was unjustly enriched by its practice of charging automated price increases;

(m)    The nature and extent of damages aid remedies for the Plaintiffs aid the class members; and

(n)    Whether Stericycle's breach of contract discharges the Plaintiffs and members of the class from paying liquidated damages for early termination of the Steri-Safe Contract.

<u>ANSWER TO NO. 61</u>:  Stericycle denies the allegations in paragraph 61.

62.    The claims of the Plaintiffs are typical of the claims of the Class because the Plaintiffs entered into the Steri-Safe Contract and were charged the API and Undisclosed Fees.

<u>ANSWER TO NO. 62</u>:  Stericycle denies the allegations in paragraph 62.

22

63.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the class members they seek to represent. Plaintiffs have retained competent counsel experienced in class actions, and they intend to prosecute this action vigorously. The interests of class members will be fairly and adequately protected by Plaintiffs and their counsel.

ANSWER TO NO. 63:  Stericycle denies the allegations in paragraph 63.

64.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of class members. Each class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Stericycle's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

ANSWER TO NO. 64:  Stericycle denies the allegations in paragraph 64.

65.     The class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Stericycle's liability to the Alabama Class members. Class treatment will ensure that all claims aid claimants are before this Court for consistent adjudication of the liability issues.

ANSWER TO NO. 65:  Stericycle denies the allegations in paragraph 65.

**PRAYER FOR RELIEF**

Stericycle denies that Plaintiffs or the purported class are entitled to any of the relief set forth in the Prayer for Relief.

4826-1632-7727.v2

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the allegations supporting certain of the Causes of Action asserted in the Complaint fail to state a claim upon which relief may be granted as required by Federal Rule of Civil Procedure 12(b). For example, Count I fails to state a claim because Plaintiffs' allegations are grounded in fraud and Plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation. Specifically, with respect to Count II, Plaintiffs entered into contracts with Stericycle and Stericycle allegedly breached its contracts with them by imposing allegedly improper price increases prior to the applicable six-year statute of limitations (Ala. Code § 6-2-34). With respect to Count I, the cause of action accrued prior to the applicable statutes of limitation of no more than four years, and there is no basis for tolling of those statutes of limitation. *See, e.g.*, Ala. Code § 8-19-14.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent any of their causes of action are brought in a forum and/or pursuant to a state law that violates the forum-selection clause and/or choice of law provision contained in the applicable contract between Plaintiffs and Stericycle.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction because Plaintiffs submitted payments to Stericycle at various times pursuant to a shared intent to settle a bona fide dispute over an unliquidated amount owed to Stericycle

24

pursuant to allegedly improper price increases and/or surcharges, and Stericycle accepted those payments as full satisfaction of Plaintiffs' contractual obligations.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because a cause of action under the Alabama Deceptive Trade Practices Act cannot be maintained as a class action.

### SIXTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the proposed class in Count I are barred, in whole or in part, because Plaintiffs failed to give Stericycle notice of Plaintiffs' claims and an opportunity to cure as required by the Alabama consumer fraud statute.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because a novation occurred when Plaintiffs at various times entered into a new and valid contract with Stericycle by mutual agreement that contained new pricing terms, and that extinguished their prior contract with Stericycle and any prior debt obligations owed to Stericycle thereunder.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel because, at various times, they intentionally paid outstanding invoices owed to Stericycle knowing that they contained allegedly improper price increases and/or surcharges, Stericycle reasonably relied upon those payments as evidence of Plaintiffs' consent to the price increases and/or surcharges and, as a result, Stericycle relied to its detriment and continued to provide services to Plaintiffs and incur the costs associated with those services pursuant to their contracts.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because at various times each of them intentionally and knowingly waived their right to contest the allegedly improper price increases

and/or surcharges either when they contacted Stericycle to discuss the allegedly improper price increases and/or surcharges and thereafter agreed to the existing or new price terms in their contracts, or when they continued to pay their invoices to Stericycle and demand that Stericycle continue to provide services to them pursuant to the contract without disputing the allegedly improper price increases and/or surcharges.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches because at various times each of them received invoices from Stericycle knowing that they contained allegedly improper price increases and/or surcharges and they engaged in undue delay and an unreasonable lack of diligence by failing to take any action to dispute the allegedly improper price increases and/or surcharges and, instead, continued to pay their invoices and acquiesce in the new prices for a significant period of time, which prejudiced Stericycle by leading Stericycle to continue to provide services to Plaintiffs and incur the costs associated with those services with the expectation that Plaintiffs would continue to pay the invoiced price for those services pursuant to their contracts with Stericycle.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Stericycle provided services for the benefit of Plaintiffs pursuant to their contracts, and, to the extent Stericycle's invoices contained allegedly improper price increases and surcharges, Plaintiffs ratified Stericycle's services and pricing by either expressly ratifying Stericycle's conduct or implicitly acquiescing in and failing to repudiate Stericycle's conduct.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the voluntary payment doctrine because, at various times, Plaintiffs received invoices demanding payment of amounts due to

4826-1632-7727.v2

Stericycle for its services that included allegedly improper price increases and/or surcharges, and Plaintiffs voluntarily paid those invoiced amounts due to Stericycle under Stericycle's claim of right to payment for the services it provided with full knowledge of the facts surrounding the claim of right to payment and without compulsion or duress.

### THIRTEENTH AFFIRMATIVE DEFENSE

Certain of the Plaintiffs' claims are barred, in whole or in part, because they previously entered into a valid agreement with Stericycle whereby they intentionally and knowingly released Stericycle from liability for any claimed damages due to allegedly improper fees or price increases.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate their own damages when they voluntarily paid Stericycle for invoiced amounts due that included allegedly improper price increases and/or surcharges without (i) attempting to have the charges reduced by contacting Stericycle to dispute or negotiate the allegedly improper price increases and/or surcharges, (ii) without attempting to terminate their contract with Stericycle to avoid the allegedly improper charges, and/or (iii) without attempting to obtain substitute arrangements for services from someone other than Stericycle.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent the contract between any Plaintiff and Stericycle contains a provision requiring all disputes between the parties be submitted to arbitration.

4826-1632-7727.v2

## SIXTEENTH AFFIRMATIVE DEFENSE

The claims of certain members of the proposed class under Count II are barred, in whole or in part, because those members of the proposed class do not have contracts with Stericycle and thus Stericycle could not have breached any contractual term.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because Plaintiffs and/or the members of the proposed class cannot meet their burden of proving that any acts, conduct, statements or omissions on the part of Stericycle misled them or were likely to mislead them, as the amount that Plaintiffs and the members of the proposed class were being billed was clearly stated on each invoice.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Stericycle is informed and believes, and on that basis alleges, that the claim for damages and/or other monetary recovery by Plaintiffs and/or members of the proposed class must be offset and reduced by any considerations or other discounts that they received from Stericycle.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' action is not properly maintained as a class action because the requirements under federal law for class certification have not been met and because certification of the proposed class would result in a denial of due process to Stericycle as well as to members of the proposed class. By way of example, Plaintiffs are not adequate class representatives or typical of the proposed class to the extent that Plaintiffs would be subject to unique defenses vis-à-vis some or all of the claims they have asserted. In addition, common questions of law and fact do not predominate over individual questions, including but not limited to, questions regarding the terms of the individual contracts with the members of the proposed class, whether those terms were breached by Stericycle and/or whether

any member of the proposed class paid invoices including the allegedly improper charges, thus subjecting them to a voluntary payment/waiver defense.

## TWENTIETH AFFIRMATIVE DEFENSE

Stericycle is presently without knowledge or information sufficient to form a belief as to whether it has additional, yet unasserted, affirmative defenses. Stericycle therefore reserves the right to assert additional affirmative defenses if it acquires knowledge or information supporting such defenses.

## PRAYER FOR RELIEF

WHEREFORE, Stericycle prays that Plaintiffs' Complaint and each and every cause of action alleged therein be dismissed with prejudice, that it be awarded its costs and attorneys' fees incurred herein and the Court award such other and further relief as it deems just in the premises.

Respectfully submitted this 14th day of April, 2016,

/s/ Raymond J. Etcheverry
Raymond J. Etcheverry (1010)
Juliette P. White (9616)
Cory D. Sinclair (11158)
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
801.532.1234

*Attorneys for Defendant STERICYCLE, INC. and STERICYCLE SPECIALTY WASTE SOLUTIONS, INC.*